# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| TERRYL T. MATT,<br><br>      Plaintiff,<br><br>vs.<br><br>FORT BELKNAP INDIAN COMMUNITY,<br><br>      Defendant.<br><br>TERRYL T. MATT,<br><br>      Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | CV-16-46-GF-BMM<br>CV-15-28-GF-BMM<br>(Consolidated)<br><br><br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS IN LIMINE** |

## **Procedural and Factual Background**

Plaintiff Terryl Matt ("Matt") has brought suit against Defendants Fort Belknap Indian Community ("FBIC") and the United States (specifically the BIA). Matt seeks damages from the BIA for injury to land she owns on the Ft. Belknap Reservation, an injunction preventing FBIC from doing further roadwork on her land not in compliance with the Clean Water Act ("CWA"), and an order requiring

1

FBIC to restore the creek running through Matt's land and pay civil CWA fines. (Doc. 1, 4.)

Matt owns a piece of land on the Fort Belknap Reservation that her father left to her at his death. Doc. 80 at 1. The United States holds title to this land in trust for Matt. *Id*. Whitehorse Canyon Creek ("the Creek") crosses Matt's land. *Id*. at 4. A road named Route 113 also crosses Matt's land near the creek. *Id*. at 3. Matt claims that Route 113 historically consisted of a dirt two track. Doc. 119 at 22, citing Doc. 118-17. FBIC claims that family friends and neighbors completed improvements to the road, with the permission of Matt's father, in the years leading up to 2006. (Doc. 87 at 5-8.) The United States and FBIC claim that this pre-2006 roadwork caused the creek to move from its historic channel on the east side of the road to the borrow ditch on the west side of the road. *Id*.; Doc. 77 at 4.

Matt acknowledges that various people worked on the road in the years leading up to 2006 and that this work began to alter the creek channel. (Doc. 119 at 23.) Flood events occurred during spring runoff on the Fort Belknap Reservation in 2009, 2011, and 2013. *Id.* at 16-19. Matt claims that no problems occurred on her land in relation to the Creek or Route 113 during the flood in 2009, even though this flood event was the worst of the three events. *Id.* at 23. The flood event in 2011 rendered Route 113 impassable. *Id.* at 15.

Matt claims that the second flood prompted FBIC to secure federal emergency funding to conduct road work on Route 113 to provide ingress and egress to two tribal members who lived off Route 113. *Id.* at 15-16. Matt also claims that FBIC planned a roadwork project on Route 113 pursuant to a 638 roads contract that FBIC possesses. *Id.* at 18; Doc. 120 at 12. Matt asserts that a BIA road crew then completed the roadwork on Route 113 that FBIC had planned and requested. (Doc. 120 at 12-14.)

The roadcrew deposited fill material on Route 113 in 2011 in order to make the road passable. *Id.* at 13-14. Matt claims that the BIA conducted this road work negligently and in violation of the CWA. Matt further contends that neither the BIA, nor FBIC, possessed a right of way that would have authorized the road work. (Doc. 1, 4.) Matt also claims that the road crews deposited large amount of fill material on her land that has created a nuisance. (Doc. 1 at 12.)

Matt asserts tort claims against the United States. (Doc. 1.) Matt directs a separate CWA claim against the BIA. (Doc. 4.) Matt's CWA claim consists of an allegation that FBIC violated CWA Section 404's dredge and fill permit requirements when it deposited fill material in the Creek area during the course of road work. (Doc. 4.)

A BIA roadcrew again conducted road work after the spring floods in 2013. (Doc. 120 at 15.) Matt alleges that this roadwork involved the deposit of more fill

material in the area of the Creek and Route 113. (Doc. 120 at 13-14.) Matt claims that this 2013 road work, similar to the road work in 2011, involved negligence, trespass, and a nuisance on the part of the United States. (Doc. 1.) Matt also claims that this road work represented a violation of Section 404 of the CWA on the part of FBIC. (Doc. 4.)

Matt generally asserts that the 2011 and 2013 roadwork on Route 113 caused the Creek to be trapped on the west side of Route 113, leaving it unable to return to its historic channel on the east side of the road. (Doc. 120 at 14.) Matt further contends that the roadwork caused the fill material to migrate to her fields, causing damage, and that this migration of fill material arose from the road crew's failure to return, or allow the Creek to return, to its historic channel. *Id.* at 18.

The United States filed three motions for summary judgment. The first motion claims that the statute of limitations bars Matt's claims. The United States grounds its second motion on the discretionary function exception to the FTCA. And the United States argues in its third motion that Matt's lack of qualified liability experts precludes her from proving her claims. (Doc. 76, 78, 89.)

FBIC filed two motions for summary judgment based on statute of limitations and the substance of Matt's CWA claims, respectively. (Doc. 83, 84.) Matt filed a single response to the United States's summary judgment motions and

a single response to FBIC's summary judgment motions. (Doc. 119, 120.) Each of the three parties has filed a motion in limine. (Doc. 95, 101, 103.)

The Court held a hearing on May 25, 2017, to address the summary judgment motions and the motions in limine. (Doc. 130.) The Court ruled on the United States's Second and Third Motions for Summary Judgment (regarding discretionary function exception and lack of liability experts), FBIC's Second Motion for Summary Judgment (regarding CWA claims), and Matt's Motion in Limine. *Id.* The court reserved its determination on the United States and FBIC's First Motions for Summary Judgment, which both concern the Statute of Limitations, and the United States's and FBIC's Motions in Limine. This Order addresses these remaining motions.

## **Discussion**

a. The United States's First Motion for Summary Judgment (Doc. 76)

The Court grants summary judgment where a moving party demonstrates both that "no genuine dispute as to any material fact" exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit under the state substantive law are considered "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and

draw all reasonable inferences in favor of the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-631 (9th Cir. 1987).

The United States argues in its First Motion for Summary Judgment that the statute of limitations bars Matt's Federal Tort Claims Act ("FTCA") claims. (Doc. 77 at 1.) The parties do not dispute that the statute of limitations for a Federal Tort Claims Act ("FTCA") claim is two years. *Id.* at 2; Doc. 119 at 28. The United States claims that the statute of limitations begins to run when the plaintiff knows, or should have known, of the alleged tort, whichever comes sooner. (Doc. 77 at 8.)

The United States claims that private parties had completed the roadwork by 2006 that permanently altered the Creek's course. *Id.* The United States points to Matt's testimony in her deposition that she knew about the damage to her property as a result of issues with the creek and the road by the spring of 2011. *Id.* at 9. The United States claims that the spring of 2011 represents the latest date the claim could have accrued. *Id.* Matt filed her Complaint more than two years later on March 20, 2015. *Id.* at 5.

The FTCA directs the Court to look to state law for questions regarding statute of limitations. *See* 28 U.S.C. § 2674; *Taylor v. United States*, 821 F.2d 1428, 1430 (9th Cir. 1987). Montana courts have recognized the doctrine of continuing torts. *Burley v. Burlington Northern & Santa Fe Ry. Co.*, 273 P.3d 825, 827 (Mont. 2012). The continuing tort doctrine deems a tort either temporary or

permanent. *Id.* The statute of limitations on a continuing tort claim does not begin to run until a tort becomes permanent. *Id.*

A tort remains temporary, and tolls the running of the statute of limitations, if the injury from the tort is "reasonably abatable." *Id.* at 842. Montana courts generally have deemed temporary seasonal or water-related torts. Doc. 119 at 32, citing *Walton v. City of Bozeman*, 588 P.2d 518, 521 (1978) (determining that seasonal stormwater runoff in irrigation ditches represented a temporary tort); *Knight v. City of Missoula*, 827 P.2d 1270, 1277-78 (Mont. 1992) (determining that dust from road traffic represented a temporary tort because it was abatable and "terminable").

The United States has presented no evidence at this stage regarding whether Matt's alleged injuries reasonably could be abated. The BIA's and FBIC's roadwork in 2011 and 2013 constitute alleged torts of a temporary, continuing nature. The actions relevant to the statute of limitations took place when the BIA conducted roadwork in 2011 and 2013, rather than when private actors may have completed roadwork before 2006. (Doc. 119 at 34.)

The damage to Matt's fields allegedly caused by the BIA's roadwork in 2011 and 2013 represents an injury similar to the stormwater runoff in *Walton*, and the dust and noise from the road in *Knight*. These injuries remain reasonably abatable in that government entities could stop them from reoccurring by altering

7

or deconstructing underlying infrastructure. The statute of limitations may not have begun to run under this theory, even at the present time, as the fill material from the BIA's roadwork allegedly continues to wash into Matt's fields on a seasonal basis. More importantly, Matt filed claims on March 20, 2015. The statute of limitations would not bar Matt's FTCA claims for injuries related to the BIA's roadwork conducted in September of 2013.

b. FBIC's First Motion for Summary Judgment (Doc. 83)

FBIC argues in its First Motion for Summary Judgment that the statute of limitations bars Matt's CWA claims. (Doc. 83.) Parties do not dispute that a five-year statute of limitations applies to CWA claims. Doc. 86 at 4; Doc. 120 at 24. FBIC argues that Matt conceded in her deposition that the roadwork that caused the change of course of the Creek had been completed by 2006. (Doc. 86 at 3.) FBIC was not aware Matt was bringing suit in this case until December 15, 2015. *Id.* at 6. FBIC argues that neither the discovery doctrine, nor equitable tolling, may excuse Matt's late filing.

FBIC relies primarily on a Fifth Circuit ruling that stands for the proposition that the statute of limitations begins running at the time of the alleged CWA violation. Doc. 86 at 5, citing *United States v. Core Laboratories Inc.*, 759 F.2d 480, 482-83 (5th Cir. 1985). FBIC characterizes the relevant CWA violation as the pre-2006 roadwork conducted by private actors. (Doc. 86 at 6.) FBIC further

8

contends that the doctrine of continuing violation does not apply on the basis that any CWA violations ceased in 2006. *Id.* at 7-10. FBIC cites many cases for the proposition that continuing effects of past CWA violations do not toll the statute of limitations. *Id.* at n.1.

Matt responds that the relevant CWA violations occurred in 2011 and 2013, when the BIA/FBIC conducted roadwork on Route 113. (Doc. 120 at 26-27.) Matt filed her Complaint in this matter well before the expiration of the five-year statute of limitations for violations arising from roadwork performed in the spring of 2013. The Court must view the roadwork conducted in the spring 2013 as the alleged CWA violation, and accordingly as the initiation of the statute of limitations, pursuant to its charge to view the evidence and make inferences in the light most favorable to Matt. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31. The statute of limitations does not bar Matt's CWA claims at this stage of the proceedings.

c. The United States's and FBIC's Motions in Limine (Doc. 95, 103.)

The United States's and FBIC's Motions in Limine present the same arguments. Both motions primarily argue that Matt has failed to procure a required liability expert. (Doc. 97 at 7; Doc. 104 at 2.) The United States and FBIC point to four reasons that the Court should disallow the testimony of Matt's proffered expert Ryan Colyer, or secondarily, either of the other two disclosed experts, Jennifer Zung or Tom Campbell.

The United States first argues that Matt's experts have failed to offer any opinions on how a breach of duty occurred in this case. (Doc. 97 at 13.) The United States and FBIC next argue that Matt's experts have failed to offer any opinion regarding causation. *Id.* The United States and FBIC further point to the fact that Matt's experts cite to no data, rationale, or methodology to shore up opinions on causation or breach of duty. *Id.*

The United States and FBIC lastly assert that Mr. Colyer lacks qualifications to opine on the topic of "negligent design, construction and maintenance of a road." *Id.* at 14. In this regard, the United States and FBIC argue that the Court should allow no previously undisclosed opinions on the topics of breach, duty, or causation. The United States concedes that Mr. Colyer mentioned the topic of negligence in Matt's November 30, 2016, expert disclosure. *Id.* at 17.

Matt's FTCA claims against the United States appear to turn on basic right of way and environmental statute compliance rather than "technical fine points of highway construction and design." (Doc. 110 at 8.) The factfinder will be able to look to the established trust duties of the United States, statutory and regulatory duties under the CWA, statutory and regulatory duties under the ERFO program, and right-of-way regulations in order to evaluate the potential liability of the United States and/or FBIC. Matt additionally has disclosed a fluvialogist/biologist expert, Matt Colyer. Colyer's expertise in riparian environments gives the Court

confidence that the factfinder will be informed of all necessary science to contemplate adequately the FTCA and CWA claims.

The Court will allow Matt to file a supplemental expert disclosure. The Court will revisit any supplemental disclosure before trial, however, to determine whether any supplemental opinions prove proper for presentation at trial. Opinions contained in any supplemental disclosure will not be presented at trial if they constitute unfair surprise to the Defendants, or if the opinions reasonably could have been formed at the original deadline for expert disclosures.

Accordingly, **IT IS ORDERED** that:

1. The United States's First Motion for Summary Judgment (Doc. 76), is DENIED.
2. FBIC's First Motion for Summary Judgment (Doc. 83), is DENIED.
3. The United States's Motion in Limine (Doc. 95), is DENIED.
4. FBIC's Motion in Limine (Doc. 103), is DENIED.

DATED this 13th day of June, 2017.

_____
Brian Morris
United States District Court Judge